POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER YILDRIM, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>ONTRAK, INC., TERREN S. PEIZER, and BRANDON H. LAVERNE,<br><br>    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>JURY TRIAL DEMANDED |

1

CLASS ACTION COMPLAINT

Plaintiff Alexander Yildrim ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Ontrak, Inc. ("Ontrak" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Ontrak; and (c) review of other publicly available information concerning Ontrak.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Ontrak securities between November 5, 2020 and February 26, 2021, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Ontrak is a healthcare company that offers a Predict-Recommend-Engage platform that organizes and automates healthcare data integration and analytics. A critical component of this platform are Ontrak programs, which are designed to provide healthcare solutions to members with behavioral conditions that cause or exacerbate chronic medical conditions.

3.     On March 1, 2021, Ontrak issued a press release announced preliminary financial results for fourth quarter and full year 2020.  Therein, the Company stated that its largest customer had terminated its contract with Ontrak, effective June 26, 2021.  The Company stated that this customer "evaluated Ontrak on a provider basis" and "[a]s such, the customer evaluated [Ontrak's] performance based on [its] ability to achieve the lowest possible cost per medical visit, and not on [its] clinical outcomes data or medical cost savings."  The Company also stated that "the coaching model which Ontrak has pioneered for over a decade was seen by the customer to be less relevant to their performance metrics."

4.     On this news, the Company's share price fell $27.32, or more than 46%, to close at $31.62 per share on March 1, 2021, thereby injuring investors.

5.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that Ontrak's largest customer evaluated the Company on a provider basis, valuing Ontrak's performance based on achieving the lowest cost per medical visit rather than clinical outcomes or medical cost savings; (2) that, as a result, Ontrak's largest customer did not find the Company's program to be effective and was reasonably likely to terminate its contract with Ontrak; (3) that, because this customer accounted for a significant portion of the Company's revenue, the loss of the customer would have an outsized impact on Ontrak's financial results; and (4)

that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this District.

10. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate

commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

11.    Plaintiff Alexander Yildrim, as set forth in the accompanying certification, incorporated by reference herein, purchased Ontrak securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.    Defendant Ontrak is incorporated under the laws of Delaware with its principal executive offices located in Santa Monica, California.  Ontrak's common stock trades on the NASDAQ exchange under the symbol "OTRK."

13.    Defendant Terren S. Peizer ("Peizer") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.    Defendant Brandon H. LaVerne ("LaVerne") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.    Defendants Peizer and LaVerne (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be

5

misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Ontrak is a healthcare company that offers a Predict-Recommend-Engage platform that organizes and automates healthcare data integration and analytics. A critical component of this platform are Ontrak programs, which are designed to provide healthcare solutions to members with behavioral conditions that cause or exacerbate chronic medical conditions.

**Materially False and Misleading
Statements Issued During the Class Period**

17.     The Class Period begins on November 5, 2020. On that day, Ontrak announced its third quarter 2020 financial results in a press release that stated, in relevant part:[1]

---

[1] Unless otherwise stated, all emphasis in bold and italics is added.

6

- Record Quarterly Revenue of $24.0 Million in Q3 2020, up 172% Year over Year and up 39% from Q2 2020

- Adjusted EBITDA Positive in last 2 months of Q3. Expect to be Significantly Adjusted EBITDA positive in 2021

- Revenue Growth in 2021 expected in excess of 100%

- Raised $48.9 million, $45.1 million net of related fees, by completing offering of Non-Convertible Cumulative Perpetual Preferred Stock

- Raised $10.0 million with the issuance of a note under Goldman Sachs debt financing agreement

- Record Number of Enrolled Members of 14,345, up 165% Year over Year and up 20% from Q2 2020

*    *    *

Mr. Peizer continued, "Our customers faced massive disruption this year that created headwinds for our 2020 financial performance including:

- A new enterprise-level procurement process and subsequent data protocol changes which delayed signing and launch of our Ontrak-CI contract by nine months and pushed approximately $38 million in revenues into 2021.

- Up to 40% more high cost members fell below the medical expense threshold compared to pre-pandemic Q1, removing 42,000 from our outreach pool.

- New compliance reviews conducted by our largest customer for all of its vendors disrupted data refreshes from July, despite the customer having no compliance issues or concerns with Ontrak.

- ***Additionally, Ontrak's rapid engagement and enrollment of the members of one of our largest plan partners exceeded estimated rates to such an extent that they asked us to reschedule further enrollment to 2021 to allow their budget to catch up.***

18.     The same day, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2020 (the "3Q20 10-Q"), affirming the previously reported financial results.   It also provided the "following table [summarizing]

7

CLASS ACTION COMPLAINT

concentration of credit risk by customer revenues as a percentage of [Ontrak's] total revenue:"

| Percentage of Revenue | Three Months Ended September 30, | | Nine Months Ended September 30, | |
|---|---|---|---|---|
| | 2020 | 2019 | 2020 | 2019 |
| Largest customer | 63.9 % | 45.6 % | 48.4 % | 33.6 % |
| 2nd largest customer | 13.6 | 15.2 | 15.1 | 20.1 |
| 3rd largest customer | 9.6 | 14.4 | 11.9 | 16.3 |
| 4th largest customer | 7.8 | 10.0 | 9.7 | 12.8 |
| Remaining customers | 5.1 | 14.8 | 14.9 | 17.2 |
| | 100.0 % | 100.0 % | 100.0 % | 100.0 % |

19.    Similarly, the 3Q20 10-Q stated:

**A substantial percentage of our revenues are attributable to four large customers, any or all of which may terminate our services at any time.**

Four customers accounted for an aggregate of 95% and 85% of our total revenue for the three months ended September 30, 2020 and 2019, respectively, and four customers accounted for an aggregate of 85% and 83% of our revenue for the nine months ended September 30, 2020 and 2019, respectively. Also, four customers represented an aggregate of 100% and 89% of our total accounts receivable as of September 30, 2020 and December 31, 2019, respectively. We expect that revenues from a limited number of customers will continue for the foreseeable future. Sales to these customers are made pursuant to agreements with flexible termination provisions, generally entitling the customer to terminate with or without cause on limited notice to us. We may not be able to keep our key customers, or these customers may decrease their enrollment levels. Any substantial decrease or delay in revenues relating to one or more of our key customers would harm our financial results. If revenues relating to current key customers cease or are reduced, we may not obtain sufficient enrollments from other customers necessary to offset any such losses or reductions.

20.    Regarding the effectiveness of Ontrak's programs, the 3Q20 10-Q stated:

**Our programs may not be as effective as we believe them to be, which could limit our potential revenue growth.**

Our belief in the efficacy of our Ontrak solution is based on a limited experience with a relatively small number of patients. Such results may not be statistically significant, have not been subjected to close scientific scrutiny, and may not be indicative of the long-term future performance of treatment with our programs. If the initially indicated results cannot be successfully replicated or maintained over time, utilization of our programs could decline substantially. There are no standardized methods for measuring efficacy of programs such as ours. Even if we believe our solutions are effective, our customers could determine they are not effective by utilizing different outcome measures. In addition, even if our customers determine our solutions are effective they may discontinue them because they determine that the aggregate cost savings are not sufficient or that our programs do not have a high enough return on investment. Our success is dependent on our ability to enroll third-party payor members in our Ontrak solutions. Large scale outreach and enrollment efforts have not been conducted and only for limited time periods and we may not be able to achieve the anticipated enrollment rates.

21. The above statements identified in ¶¶ 17-20 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that Ontrak's largest customer evaluated the Company on a provider basis, valuing Ontrak's performance based on achieving the lowest cost per medical visit rather than clinical outcomes or medical cost savings; (2) that, as a result, Ontrak's largest customer did not find the Company's program to be effective and was reasonably likely to terminate its contract with Ontrak; (3) that, because this customer accounted for a significant portion of the Company's revenue, the loss of the customer would have an outsized impact on Ontrak's financial results; and (4)

that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

22.    On March 1, 2021, Ontrak issued a press release announced preliminary financial results for fourth quarter and full year 2020.  Therein, the Company stated that its largest customer had terminated its contract with Ontrak, effective June 26, 2021.  The Company stated that this customer "evaluated Ontrak on a provider basis" and "[a]s such, the customer evaluated [Ontrak's] performance based on [its] ability to achieve the lowest possible cost per medical visit, and not on [its] clinical outcomes data or medical cost savings."  The Company also stated that "the coaching model which Ontrak has pioneered for over a decade was seen by the customer to be less relevant to their performance metrics."  Specifically, the Company's press release stated, in relevant part:

> Mr. Peizer continued, "After a long process with our largest customer where we believed we were working towards an extended and expanded contract, *we were notified after market close on February 26, 2021 that our participation status with this customer will be terminated effective June 26, 2021. We were advised to stop enrollment of new members for this customer and await guidance from the customer on transition plans for the 8,400 members who are currently benefiting from the Ontrak program*. We remain fully committed to the health plan and to its members, and will ensure that every member receives quality care through the transition, so that pandemic-related anxiety is not heightened by the change in the member's care team"

CLASS ACTION COMPLAINT

Mr. Peizer added, "The relationship with our Ontrak-A customer was unique, because they evaluated Ontrak on a provider basis, not as a vendor as do all of our other health plan partners. As such, *the customer evaluated our performance based on our ability to achieve the lowest possible cost per medical visit, and not on our clinical outcomes data or medical cost savings, which were meaningful and significant.* Unlike our other health plan partners, we interacted only with the behavioral health division, with no involvement from the medical division of the plan. *We believe that the coaching model which Ontrak has pioneered for over a decade was seen by the customer to be less relevant to their performance metrics*. We have consistently found that our care coaches have a tremendously positive impact on member experience and readiness to engage with the healthcare system. This is the reason that many digital healthcare apps are now building care coaching into their products. We have a strategy in place to regain the Ontrak-A business, and are currently in late stage discussions with other customers whose metrics align with our value proposition of an integrated approach to whole health that delivers an average ROI of 3.7, average cost savings of 40% to 50%, and durable clinical outcomes with exceptionally high program retention and member experience scores. Collectively, we have a market opportunity of over $30 billion."

23.     Ontrak also provided its outlook for fiscal 2021, which highlighted the impact of the loss of the customer:

**For the year ending December 31, 2021, the Company provides the following outlook:**

- Revenue of $100 million. Initially, we were going to guide to 100% growth with revenues of $165 million. In light of Ontrak-A, we hopefully are being conservative with our $100 million revenue guidance. Of that number, approximately $88 million is either already under contract or in the signature phase and those health plan partners are already contemplating further expansions. Moreover, we see tremendous upside with large plans in our pipeline.

- Given the strength of our pipeline, we anticipate returning to a 100% revenue growth rate in 2022.

24.     On this news, the Company's share price fell $27.32, or more than 46%, to close at $31.62 per share on March 1, 2021, thereby injuring investors.

CLASS ACTION COMPLAINT

**CLASS ACTION ALLEGATIONS**

25.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Ontrak securities between November 5, 2020 and February 26, 2021, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

26.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Ontrak's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Ontrak shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Ontrak or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

CLASS ACTION COMPLAINT

27.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Ontrak; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it

CLASS ACTION COMPLAINT

impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

31.    The market for Ontrak's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Ontrak's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Ontrak's securities relying upon the integrity of the market price of the Company's securities and market information relating to Ontrak, and have been damaged thereby.

32.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Ontrak's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Ontrak's business, operations, and prospects as alleged herein.

33.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to

be made a series of materially false and/or misleading statements about Ontrak's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

34. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

35. During the Class Period, Plaintiff and the Class purchased Ontrak's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

36. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements

or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Ontrak, their control over, and/or receipt and/or modification of Ontrak's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Ontrak, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE (FRAUD-ON-THE-MARKET DOCTRINE)

37. The market for Ontrak's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Ontrak's securities traded at artificially inflated prices during the Class Period. On January 26, 2021, the Company's share price closed at a Class Period high of $95.00 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Ontrak's securities and market information relating to Ontrak, and have been damaged thereby.

38. During the Class Period, the artificial inflation of Ontrak's shares was caused by the material misrepresentations and/or omissions particularized in this

Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Ontrak's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Ontrak and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39. At all relevant times, the market for Ontrak's securities was an efficient market for the following reasons, among others:

(a) Ontrak shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Ontrak filed periodic public reports with the SEC and/or the NASDAQ;

(c) Ontrak regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services

CLASS ACTION COMPLAINT

and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Ontrak was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.    Each of these reports was publicly available and entered the public marketplace.

40.    As a result of the foregoing, the market for Ontrak's securities promptly digested current information regarding Ontrak from all publicly available sources and reflected such information in Ontrak's share price.    Under these circumstances, all purchasers of Ontrak's securities during the Class Period suffered similar injury through their purchase of Ontrak's securities at artificially inflated prices and a presumption of reliance applies.

41.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.    Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.    All that is necessary is that the facts withheld be material

CLASS ACTION COMPLAINT

in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

42.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.   In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Ontrak who knew that the statement was false when made.

# FIRST CLAIM

## Violation of Section 10(b) of The Exchange Act and
## Rule 10b-5 Promulgated Thereunder
## <u>Against All Defendants</u>

43.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

44.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Ontrak's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

45.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ontrak's securities in violation of Section 10(b) of the Exchange Act and Rule 10b¬5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

CLASS ACTION COMPLAINT

46.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Ontrak's financial well-being and prospects, as specified herein.

47.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ontrak's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Ontrak and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation,

development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Ontrak's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

CLASS ACTION COMPLAINT

50.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Ontrak's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Ontrak's securities during the Class Period at artificially high prices and were damaged thereby.

51.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Ontrak was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Ontrak securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

CLASS ACTION COMPLAINT

53.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

54.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55.    Individual Defendants acted as controlling persons of Ontrak within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.    As set forth above, Ontrak and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

25

CLASS ACTION COMPLAINT

(c)      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)      Such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Dated: March 19, 2021

Respectfully submitted,

POMERANTZ LLP

By: <u>*s/ Jennifer Pafiti*</u>
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

***Attorneys for Plaintiff***

CLASS ACTION COMPLAINT

Thursday, March 4, 2021

## Ontrak (OTRK)

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Ontrak, Inc. ("Ontrak"  or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Ontrak securities at the direction of plaintiffs counsel, or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Ontrak securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  The attached sheet lists all of my transactions in Ontrak securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.


**Name**

**Print Name**

Alexander Yildirim

**Signature**



(redacted)

2

**Ontrak (OTRK)**                                                    **Yildirim, Alexander**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 2/2/2021 | 5 | $85.0200 |
| Purchase | 2/2/2021 | 6 | $85.0200 |
| Purchase | 2/3/2021 | 6 | $79.6200 |